1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10

11    DARRIN ARMSTRONG,              )   Civil No. 11-0401-WQH-WVG
                                     )
12                  Plaintiff,       )   REPORT AND RECOMMENDATION
                                     )   GRANTING IN PART AND DENYING
13    v.                             )   IN PART DEFENDANTS' MOTION TO
                                     )   DISMISS
14    LARRY SMALLS, et al.,          )   (DOC. ## 12, 14)
                                     )
15                  Defendants.      )
                                     )
16    _____ )

17

18                                   I

19                              INTRODUCTION

20         Plaintiff Darrin Armstrong (hereinafter "Plaintiff"), a state

21    prisoner proceeding *pro se* and *in forma pauperis,* filed a Civil

22    Rights Complaint (hereinafter "Complaint") under 42 U.S.C. § 1983.

23    Defendants Larry Smalls, et al., (hereinafter "Defendants") filed an

24    Amended Motion to Dismiss (hereinafter "Motion to Dismiss")and a

25    Wyatt Notice pursuant to Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th

26    Cir. 2003). On June 6, 2011, the Court also provided Plaintiff with

27    a Notice pursuant to Wyatt.

28

                                                         11cv0401

1    The Court, having reviewed Plaintiff's Complaint and
2    Defendants' Motion to Dismiss, hereby finds that Plaintiff is not
3    entitled to the relief requested and therefore RECOMMENDS that
4    Defendants' Motion to Dismiss be GRANTED and that Plaintiff's
5    Complaint be DISMISSED WITHOUT PREJUDICE.

6                                    II

7                          FACTUAL ALLEGATIONS

8    This statement of facts is based, in large part, upon the
9    allegations in Plaintiff's Complaint and upon the facts described in
10   the Rules Violation Report (hereinafter "RVR") and subsequent
11   administrative appeals that were attached to the Complaint as
12   exhibits.

13   Plaintiff was a state prisoner at Calipatria State Prison at
14   the time of the events herein. (Complaint at 3). He has since been
15   moved to Centinela State Prison. (Id. at 2).

16   On March 20, 2010, Plaintiff and eight other African-American
17   prisoners were exiting the prison cafeteria when they were attacked
18   by ten Caucasian prisoners. (Id. at 3). During the altercation,
19   Plaintiff was cut or stabbed on the right side of his face,
20   specifically, on the mouth and right cheek. (Id. at 4). This wound
21   required medical attention, including stitches, from a hospital
22   outside the prison. (See id., Attachment A, "Inmate Appeal for
23   Director's Level Review.")

24   At the hospital, the treating physician, Dr. Michael H.
25   Bishop, noted lacerations to Plaintiff's face and a contusion to his
26   chest. (See id., Attachment A, "Medical Report of Injury - Darrin
27   Armstrong"). In the section of the Medical Report of Injury titled
28   "STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY,"

11cv0401

Plaintiff stated that he had a "laceration to [right] side of the face after I got into a fight on the yard." (_Id._).

Plaintiff further alleges that Defendants had been informed by "2 or more reliable sources that white inmates were going to attack, and try to kill some black prisoners, on C-facility."[1] (Complaint at 3). At the time of the events of this case, Defendants were all employees of the California Department of Corrections and Rehabilitation (hereinafter "CDCR").

Plaintiff identifies one of the informants as a Caucasian inmate named T. Brady.[2] (_Id._) Inmate Brady allegedly knew of the planned attack, did not want to participate, and therefore informed the defendant guards in order to be placed in protective custody. (_Id._ at 3-4). Plaintiff does not identify which Defendants were informed by Inmate Brady.

After Brady allegedly informed the defendant guards of the planned attack, Plaintiff's housing assignment was changed to the Administrative Segregation Unit (hereinafter "ASU") based on his "identification by Staff as an active participation [sic] in this Riot..." (_Id._, Attachment A, "Administrative Segregation Unit Placement Notice").

III

PLAINTIFF'S CLAIMS

Plaintiff's Complaint contains two causes of action. First, he alleges that his Eighth Amendment right not to be subjected to cruel and unusual punishment was violated by Defendants' failure to

---

[1]    Although not explicitly stated, the record clearly indicates that, at the time of the events herein, Plaintiff was assigned to the lower bunk in cell 235 in facility C. (RVR at 1). This fact is not contested.

[2]    Inmate T. Brady, CDCR #P-64982.

11cv0401

1   protect him from substantial risk of serious harm. Second, Plaintiff

2   alleges a state law tort claim of negligence against Defendants for

3   failure to exercise due care.

4        Both of Plaintiff's claims are brought against former Warden

5   Larry Smalls, Associate Warden S. Anderson, Correctional Officer M.

6   Whitman, Correctional Officer J. Montano, Correctional Officer P.

7   Zills, and other Correctional Officers identified as Does 1-5. All

8   Defendants are named in their individual and official capacities.

9        Plaintiff's claims allege that, despite prior warning,

10  Defendants took no preventative action and were therefore deliber-

11  ately indifferent to Plaintiff's health and safety. He further

12  claims that Defendants allowed the attack to occur as planned "for

13  training purposes ... to allow rookie Correctional officers to gain

14  experience" in dealing with such violent situations. (See Complaint

15  at 4).

16       Plaintiff claims that, as a "direct result of the defendants

17  [sic] failure to protect" him, he received a stab wound to his face.

18  Furthermore, he claims that this wound has resulted in permanent

19  disfigurement, permanent nerve damage, migraine headaches, insomnia,

20  Post-Traumatic Stress Disorder, paranoia of being in crowds, and

21  paranoia of people approaching him from behind. As a result, he

22  claims that he "lives in a constant state of fear." (Id.).

23       Plaintiff seeks declaratory relief, compensatory damages of

24  $50,000 from each defendant, punitive damages of $100,000, costs and

25  expenses, and attorney fees.[3/]

26

27

28  [3/]   Plaintiff is precluded from obtaining an award of attorney's fees due to his
    *pro se* status. See Kay v. Ehrler, 499 U.S. 432, 438 (1991) (*Pro se* litigants are
    not entitled to attorney fees awards).

1

2                                      IV

3                            PROCEDURAL HISTORY

4          On March 25, 2010, Plaintiff was issued an RVR as a result of

5    the fight. Specifically, the RVR charged him with "willfully

6    participating in a racial riot" pursuant to 15 Cal. Code of Regs. §

7    3005(d)(2).[4/]  (See Complaint, Attachment A, "Rules Violation

8    Report").

9    A.    FIRST LEVEL HEARING

10         On April 23, 2010, Plaintiff appeared before Correctional

11   Lieutenant H. Drake, who served as Senior Hearing Officer (hereinaf-

12   ter "SHO"). The SHO determined that, despite Plaintiff's self-

13   defense claim, Plaintiff was guilty of violating 15 C.C.R. §

14   3005(d)(2). The SHO specifically relied upon the statement made in

15   the RVR noting that the Reporting Employee observed "Inmate

16   ARMSTRONG 'fighting back' as she responded" to the altercation.

17   Consequently, Plaintiff forfeited 90 days of good time credit and 10

18   days loss of yard privileges. Plaintiff's request to have his

19   Segregated Housing Unit term revoked, included in his Second Level

20   Appeal, indicates that he was likely still housed in the ASU and not

21   returned to General Population following the hearing.

22   B.    SECOND LEVEL APPEAL

23         On May 19, 2010, Plaintiff filed an appeal regarding the

24   First Level decision. He argued that the Caucasian inmates were

25   identified as the aggressors and had attacked or ambushed Plaintiff

26

27   [4/]    This code citation appears to be in error. 15 C.C.R. § 3005(d)(2) refers to
     encouraging a riot; "Inmates shall not, with the intent to cause a riot, willfully
     engage in conduct that urges a riot, or urges others to commit acts of force or
28   violence at a time and place under circumstances that produce a clear and present
     and immediate danger of acts of force or violence or the burning or destroying of
     property." Actual participation in a riot is proscribed by 15 C.C.R. § 3005(d)(3),
     which reads "Inmates shall not participate in a riot, rout, or unlawful assembly."

                                                                    11cv0401

and the other African-American inmates from behind. Furthermore, Plaintiff argued that his participation had not been intentional, deliberate, or premeditated; therefore, he had not "willfully" participated in the riot. Plaintiff pointed to the language of the RVR (that Plaintiff was observed "fighting back") as proof that his participation was limited to self-defense.

Plaintiff's appeal also stated that he was seeking to obtain legal counsel in order to proceed with a 42 U.S.C. § 1983 civil suit and a gross negligence tort class action claim against the Calipatria State Prison administration. Specifically, he alleged that the guards had prior knowledge of this riot and that their failure to attempt to prevent the riot was a violation of 15 C.C.R. § 3300.[5]

In the section of the appeal form labeled "Action Requested," Plaintiff listed five items: 1) a reversal of the guilty finding, 2) restoration of his good time credits, 3) removal of the RVR from his "C-file", 4) revocation of his SHU placement, and 5) transfer to "another 270 design institution (Preferably Centinela)".[6] Notably, this section of the Second Level Appeal omits the relief requested in the case now before the Court.

On June 6, 2010, the Chief Disciplinary Officer elected to dismiss the RVR and wrote on the RVR "Dismiss in interest of justice

---

[5]   15 C.C.R. § 3300: "It is the duty of every employee to do everything possible to prevent disorders. Each employee must be trained to be familiar with the procedures for handling disorders. Disorders and other emergencies must be reported to supervisory staff at the earliest possible moment. Whenever a disorder occurs, a prompt investigation will be made by the warden."

[6]   The terms "C-file" and "270 design institution are not defined in the Complaint, Motion to Dismiss, or associated filings. However, "[t]he '180' design is considered the 'most secure prison design' because it 'gives control-booth officers a straight-on look at prisoners.' In contrast, the '270' design 'with portions of the house reaching back behind the blind side of the booth' is considered less secure." See <http://en.wikipedia.org/wiki/California_State_Prison,_Sacramento>.

1  - (self defense.)" Consequently, Plaintiff was informed that his

2  appeal was "Partially Granted" and was further advised that "this

3  issue may be submitted for a Director's Level of Review if desired."

4  Notably, it does not appear that Plaintiff was informed which of the

5  five actions he requested were granted.

6  C.    DIRECTOR'S LEVEL REVIEW

7       On December 24, 2010, Plaintiff appealed the Second Level

8  Response, noting that it was "unclear as to what relief is available

9  through the department or if [his] actions requested were fully

10  exhausted."[1] On February 10, 2011, D. Foston, Chief of the Inmate

11  Appeals Branch, declined to review the Second Level Appeal response.

12  Chief Foston wrote that Plaintiff's "appeal was granted at the

13  institutional level. There is no unresolved issue to be reviewed at

14  the Director's Level of Review." As a result, Plaintiff was not

15  given clarification as to which of his five requested action items

16  were granted.

17

18  D.    CURRENT CASE

19       On February 25, 2011, Plaintiff filed the suit now before

20  this Court. Plaintiff claims to have exhausted all available

21

22  [1]    Plaintiff's Director's Level Appeal request appears to be timely even though
   six months elapsed. Plaintiff claims that he was transferred to Centinela State
23  Prison immediately after receiving the Second Level Appeal response. However, the
   placement notice provided by Plaintiff as proof of this transfer gives the date
24  of transfer as August 21, 2010, six weeks after the response.
        Upon arrival at Centinela, Plaintiff was placed in the ASU. The placement
25  notice gives conflicting reasons for this placement. The narrative portion
   describes the placement as a result of a lack of General Population bed space.
   However, the check box for lack of bed space is not checked; instead the check
26  boxes for immediate threat and institutional security risk are checked.
        As a result of Plaintiff's placement in the ASU, his property was withheld
27  from the date of his arrival to one and a half weeks after his eventual move to
   the General Population. Although not specifically alleged, this Court reasonably
28  assumes that the inaccessibility of Plaintiff's paperwork excusably precluded him
   from filing his Director's Level Appeal request.
        Furthermore, a December 6, 2010, response to Plaintiff's request asking him
   to sign and date a section clearly indicates that Plaintiff attempted to file his
   request at some point between August 21 and December 6, 2010.

11cv0401

1   administrative remedies. Plaintiff has served all the named
2   Defendants.

3                                   V

4                        STANDARD OF REVIEW

5        A motion to dismiss for failure to state a claim pursuant to
6   Fed. R. Civ. Pro. 12(b)(6) tests the legal sufficiency of the claims
7   in the complaint. Fed. R. Civ. Pro. 8(a)(2) requires only "a short
8   and plain statement of the claim showing that the pleader is
9   entitled to relief" in order to "give the defendant fair notice of
10  what the ... claim is and the grounds upon which it rests." Bell
11  Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley
12  v. Gibson, 355 U.S. 41, 47 (1957)); Erickson v. Pardus, 127 S.Ct.
13  2197, 2200 (2007). Dismissal of a claim is appropriate only where
14  the complaint lacks a cognizable theory. Bell Atlantic, 550 U.S. at
15  553-565. The court must accept as true all material allegations in
16  the complaint, as well as reasonable inferences to be drawn from
17  them, and must construe the complaint in the light most favorable to
18  the plaintiff. N.L. Industries, Inc. v. Kaplan, 792 F.2d 896, 898
19  (9th Cir. 1986); Parks School of Business, Inc. v. Symington, 51
20  F.3d 1480, 1484 (9th Cir. 1995). The court does not consider whether
21  the plaintiff will "ultimately prevail." Scheuer v. Rhodes, 94 S.Ct.
22  1683, 1686 (1974).

23       "If a complaint is accompanied by attached documents, the
24  court is not limited by the allegations contained in the complaint.
25  These documents are part of the complaint and may be considered in
26  determining whether the plaintiff can prove any set of facts in
27  support of the claim." Roth v. Garcia Marquez, 942 F.2d 617, 625 n.1
28  (1991) [quoting Durning v. First Boston Corp., 815 F.2d 1265, 1267
    (9th Cir.1987)]. "[W]hen the allegations of the complaint are

                                    8                          11cv0401

refuted by an attached document, the Court need not accept the allegations as being true." <u>Roth</u>, 942 F.2d 625 n.1 [<u>citing Ott v. Home Savings & Loan Ass'n</u>, 265 F.2d 643, 646 n.1 (9th Cir.1958)].

"The focus of any Rule 12(b)(6) dismissal . . . is the complaint." <u>Schneider v. California Dep't of Corrections</u>, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Thus, when resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside the pleadings. <u>Id.</u> This precludes consideration of "new" allegations that may be raised in a plain- tiff's opposition to a motion to dismiss brought pursuant to Fed. R. Civ. Pro. 12(b)(6). <u>Id.</u> (<u>citing Harrell v. United States</u>, 13 F.3d 232, 236 (7th Cir. 1993); 2 <u>Moore's Federal Practice</u>, § 12.34[2] (Matthew Bender 3d ed.) ["The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a)."]).

To state a claim under 42 U.S.C. § 1983, a plaintiff must show: (1) that the conduct complained of was committed by a person acting under color of state law; and, (2) that the conduct deprived the plaintiff of a constitutional right. <u>Broam v. Bogan</u>, 320 F.3d 1023, 1028 (9th Cir. 2003); <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988). Vicarious liability does not exist under § 1983. <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1948 (2009); <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002) (citations omitted). To hold a person "liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation." <u>Id</u>. A supervisory official may be liable only if he or she was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful

11cv0401

conduct and the constitutional violation. See Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991). Causation may be established only by showing that the supervisor set in motion a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict the injury. Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998).

Finally, where a plaintiff appears in propria persona in a civil rights case, the Court must be careful to construe the pleadings liberally and afford plaintiff any benefit of the doubt. See Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir. 1988); Bretz v. Kelman, 773 F.2d 1026, 1027, n.1 (9th Cir. 1985). The rule of liberal construction is "particularly important in civil rights cases." Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) ("Presumably unskilled in the law, the pro se litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel.") In giving liberal interpretation to a pro se civil rights complaint, however, a court may not "supply essential elements of the claim that were not initially pled." Ivey v. Bd. of Regents of the University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Id.; see also Sherman v. Yakahi, 549 F.2d 1287, 1290 (9th Cir. 1977) ("Conclusory allegations, unsup-ported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act."). Thus, at a minimum, even the pro se plaintiff "must allege with at least some degree of particularity overt acts which defendants engaged in that support [his] claim."

11cv0401

1   <u>Jones v. Community Redevelopment Agency</u>, 733 F.2d 646, 649 (9th Cir.

2   1984).

3                                   VI

4                              <u>DISCUSSION</u>

5        Defendants raise four grounds in support of their Motion to

6   Dismiss. First, they contend that they are immune from suits for

7   money damages when sued in their official capacities as agents or

8   representatives of the CDCR. Second, they argue that Plaintiff has

9   not exhausted his administrative remedies and thus has yet to

10  satisfy the requirements of the Prison Litigation Reform Act

11  (hereinafter "PLRA"). Third, Defendants claim that Plaintiff has

12  failed to state facts sufficient to support his claim of deliberate

13  indifference constituting an Eighth Amendment violation. Fourth,

14  Defendants claim that Plaintiff has likewise failed to state facts

15  sufficient to overcome their immunity in regards to his state law

16  torts claims.

17  A.    DEFENDANTS, IN THEIR OFFICIAL CAPACITIES, ARE IMMUNE TO SUITS

18        FOR DAMAGES

19       Under the Eleventh Amendment, states are immune from private

20  damage actions brought in federal court. <u>Henry v. County of Shasta</u>,

21  132 F.3d 1020, 1026 (9th Cir. 1999). Such immunity flows to state

22  officials, barring suits for damages against them in their official

23  capacities. <u>Regents of the University of California v. Doe</u>, 519 U.S.

24  425, 429 (1997).

25       In this case, Plaintiff seeks $50,000 in compensatory damages

26  from each defendant and $100,000 in punitive damages. Insofar as he

27  seeks these damages from Defendants in their official capacity, his

28  suit is barred. Even assuming all his contentions to be true, and

    considering Plaintiff's arguments in the light most favorable to

11cv0401

1  him, Plaintiff cannot overcome this Constitutionally-imposed
2  limitation.

3      However, the Court notes that Plaintiff also names the
4  Defendants in their individual capacities and seeks declaratory
5  relief; the Eleventh Amendment presents no bar to those aspects of
6  his suit.

7      Consequently, this Court RECOMMENDS that Defendants' Motion
8  to Dismiss be GRANTED as to the monetary damages sought by Plaintiff
9  from Defendants named in their official capacity.

10 B.    PLAINTIFF HAS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES
11       1. 42 U.S.C. § 1983 Claim

12      Under PLRA, an inmate who wishes to bring an action under 42
13 U.S.C. § 1983 regarding prison conditions must first exhaust the
14 available administrative remedies. 42 U.S.C. § 1997e(a); see also
15 Porter v. Nussle, 534 U.S. 516, 524 (2002) (although exhaustion of
16 administrative remedies is not ordinarily a prerequisite for suits
17 under 42 U.S.C. § 1983, "PLRA's exhaustion requirement applies to
18 all inmate suits about prison life..."). Exhaustion of the available
19 administrative remedies is determined by examining the relevant
20 administrative appeal system. See Jones v. Bock, 549 U.S. 199, 218
21 (2007) ("The prison's requirements, and not the PLRA, ... define the
22 boundaries of proper exhaustion.").

23      Here, the applicable requirements are those governing the
24 California State Prison system. Specifically, in order to exhaust
25 his administrative remedies, an inmate of this system must proceed
26 through four levels: (1) informal resolution, (2) first formal level
27 appeal, (3) second formal level appeal to the institution head, and
28 (4) third level appeal to the Director of the California Department
   of Corrections. 15 C.C.R. § 3084.5, 3084.7; Parmer v. Alvarez, 2010

WL 4117465, *2 (S.D. Cal. 2010). These steps must be completed before the inmate files a claim in federal court. Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006).

Here, Plaintiff has failed to show that he completed the four steps with regard to his current claims as pled in his Complaint. Plaintiff's central claim is that Defendants failed to heed warnings of an imminent planned attack upon Plaintiff. This issue is separate and distinct from his claim that the RVR was "blatantly erroneous". (See Complaint, Attachment A, "Inmate/Parolee Appeal Form" at 4).

The Court notes that Plaintiff did complete the steps to exhaust his RVR claim. However, his 42 U.S.C. § 1983 claim has not proceeded through these steps. Therefore, the only matter which has been administratively exhausted is the dismissal of the RVR.

The Court further notes that, prior to filing his claim in federal court, Plaintiff's sole notice to the CDC of a 42 U.S.C. § 1983 claim was his Second Level Appeal. (See Complaint, Attachment A, "Inmate/Parolee Appeal Form" at 1). Specifically, Plaintiff therein stated:

> "Due to [the] deliberate violation [Plaintiff] along with 8 other Black 'VICTIMS' are seeking to obtain legal counsel to prepare a 42 USC 1983 civil suit and Tort claim based on the gross negligence of Calipatria State Prison Administration. This civil suit will be litigated as a class action suit on behalf of the Black inmates who were attacked when it could have been prevented." [Id. (emphasis original)].

These sentences are insufficient to establish that Plaintiff attempted to exhaust his administrative remedies relating to his 42 U.S.C. § 1983 claim because they merely state that Plaintiff was in the process of obtaining counsel. Furthermore, in the section of the same appeal form titled "Action Requested," Plaintiff did not list

1    any relief related to his 42 U.S.C. § 1983 claim. Instead, all five

2    of his requested actions related to his RVR claim.

3         Even assuming the truth of Plaintiff's allegations and

4    considering Plaintiff's arguments in the light most favorable to

5    him, it is clear that Plaintiff has not exhausted the administrative

6    remedies available to him in relation to his 42 U.S.C. § 1983 claim.

7         Consequently, this Court RECOMMENDS that Defendants' Motion

8    to Dismiss be GRANTED as to 42 U.S.C. § 1983 claim.

9         2. State Law Tort Claim

10        Plaintiff's second claim is brought under California state

11   law. As a result, this Court applies California law regarding

12   exhaustion of administrative remedies rather than the PLRA. See Bass

13   v. First Pac. Networks, Inc., 219 F.3d 1052, 1055 (9th Cir. 2000)

14   (law of forum state applies to claims over which federal court has

15   supplemental jurisdiction). However, California law is similar to

16   the PLRA in requiring administrative exhaustion; "California's state

17   courts specifically [apply] the general exhaustion requirement to

18   prisoner suits, requiring prisoners to exhaust administrative

19   remedies before seeking judicial relief." Wright v. State of

20   California, 122 Cal. App. 4th 659, 665 (2004). Furthermore, under

21   California law, "inmates are required to exhaust administrative

22   remedies, even when seeking money damages unavailable in the

23   administrative process." Id. at 668.

24        As explained supra, Plaintiff's Second Level Appeal was

25   limited to his RVR claim. The mere mention of a prospective state

26   law tort claim in the description of the problem is insufficient to

27   establish that Plaintiff attempted to exhaust his administrative

28   remedies in that regard.

14

11cv0401

Even assuming the truth of Plaintiff's allegations and considering Plaintiff's arguments in the light most favorable to him, it is clear that Plaintiff has not exhausted the administrative remedies available to him in relation to his tort claim.

Consequently, this Court RECOMMENDS that Defendants' Motion to Dismiss be GRANTED as to Plaintiff's tort claim.

### 3. Conclusion

Plaintiff has not shown that he has exhausted the administrative remedies available to him as required by the PLRA (with regard to the 42 U.S.C. § 1983 claim) or equivalent state law (with regard to his tort claim). Therefore, the Court RECOMMENDS that Defendants' Motion to Dismiss be GRANTED as to both these claims.

### C.  PLAINTIFF SUFFICIENTLY STATES A COGNIZABLE EIGHTH AMENDMENT CLAIM

Defendants argue that Plaintiff has failed to state a cognizable Eighth Amendment claim because he does not allege deliberate indifference by Defendants. Specifically, Defendants argue that, although prison officials have a duty to protect prisoners from violence at the hands of other prisoners, a violation of this duty may only be found when those officials display "deliberate indifference." See Farmer v. Brennan, 511 U.S. 825, 833 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment.").

Under Farmer, "[t]o properly allege a claim based on a failure to prevent harm, a prisoner needs to allege (1) that conditions of his imprisonment objectively posed a "substantial risk of serious harm" and (2) that prison officials subjectively acted with "deliberate indifference" to his safety." Id. at 834. In order

1  to establish the second element of the <u>Farmer</u> test, a defendant must
2  know of and disregard an excessive risk to inmate health or safety.
3  <u>Id.</u> at 837.

4      Here, Plaintiff alleges that Inmate Brady informed Defendants
5  of the planned attack and that Defendants' failure to act was caused
6  by their deliberate indifference. Plaintiff is a non-moving party
7  here because Defendants moved for dismissal of his case. Therefore
8  the Court must assume the truth of the facts which are presented and
9  construe all inferences from them in the light most favorable to the
10  non-moving party. <u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th Cir.
11  2002). Furthermore, because Plaintiff is proceeding *pro se*, his
12  pleadings should be liberally construed. <u>Id.</u>

13      However, Plaintiff's "[f]actual allegations must be enough to
14  raise a right to relief above the speculative level on the assump-
15  tion that all the allegations in the complaint are true." <u>Bell</u>
16  <u>Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). A court is not
17  "required to accept as true allegations that are merely conclusory,
18  unwarranted deductions of fact, or unreasonable inferences."
19  <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir.
20  2001); <u>Ramirez v. Giurbino</u>, 2011 WL 2669484, *2 (S.D. Cal. 2011).
21  Furthermore, a court may not "supply essential elements of the claim
22  that were not initially pled." <u>Ivey v. Bd. of Regents of the Univ.</u>
23  <u>of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982); <u>Ramirez</u>, 2011 WL
24  2669484 at *2.

25      Here, Plaintiff's Complaint does not describe which Defen-
26  dants by Inmate Brady were informed of the impending attack, when he
27  informed them, or with what degree of specificity he informed them.
28  However, to survive a Motion to Dismiss, Plaintiff's claim must be
   weighed with the assumption that the facts pled are true and that

11cv0401

1    all inferences from those facts are drawn in the light most

2    favorable to the non-moving party.

3         Defendants argue that the elements of the _Farmer_ test have

4    not been met because Plaintiff has not shown that Defendants had

5    actual knowledge of the time, place, and attackers in advance of the

6    attack. However, if the facts are as Plaintiff pleads them, it may

7    very well be that Defendants had that knowledge. Plaintiff's

8    contentions are something more than the conclusory and unwarranted

9    deductions of fact contemplated by _Bell_ because Plaintiff identifies

10   one of the informants by name and CDCR number and explains this

11   individual's motivation in becoming an informant. Whether Inmate

12   Brady's words were sufficient to put Defendants on notice is a

13   question of fact, not of law.

14        Defendants next argue that Plaintiff's claim against

15   Defendants in their supervisory role is precluded. Under 42 U.S.C.

16   § 1983, there is no _respondeat superior_ liability. _Taylor v. List_,

17   880 F.2d 1040, 1045 (9th Cir. 1989) ("A supervisor is only liable

18   for the constitutional violations of his subordinates if the

19   supervisor participated in or directed the violations, or knew of

20   the violations and failed to act to prevent them."). However,

21   Defendants' argument in this regard is predicated upon the assump-

22   tion that Plaintiff's claim names certain Defendants solely due to

23   their supervisory roles. Plaintiff may in fact be naming those

24   Defendants as parties who had actual knowledge of the attack via

25   Inmate Brady. If Inmate Brady somehow informed the Warden directly,

26   no _respondeat superior_ theory is necessary to support naming the

27   Warden as a defendant. As noted above, details of what Inmate Brady

28   said and to whom are critical questions of fact, not of law.

11cv0401

1      _Ivey v. Bd. of Regents_' admonition against creating essential

2  elements that were not actually pled is not at issue here. _Ivey_, 673

3  F.2d at 268. Plaintiff's factual assertions, as pled, when construed

4  liberally and in the light most favorable to him, may support the

5  argument that all the Defendants had actual prior knowledge of the

6  attack and failed to act. Therefore, Plaintiff has sufficiently

7  stated a cognizable Eighth Amendment claim.

8      Consequently, this Court RECOMMENDS that Defendants' Motion

9  to Dismiss be DENIED in this regard.

10  D.    DEFENDANTS HAVE NOT PROVEN THEIR IMMUNITY FROM SUIT UNDER

11      STATE LAW

12      Defendants argue that, as to Plaintiff's negligence claim,

13  Plaintiff's Complaint fails to satisfy the heightened pleading

14  standard against public employees. Defendants raise three arguments:

15  (1) heightened pleading standard under California Government Code §

16  951 (hereinafter "§ 951"), (2) immunity under California Government

17  Code § 820.2 (hereinafter "§ 820.2"), and (3) with regard to former

18  Warden Smalls and Associate Warden Anderson, immunity under

19  California Government Code § 820.8 (hereinafter "§ 820.8").

20      1. Heightened Pleading Standard under § 951

21      Defendants contend that a heightened pleading standard exists

22  for prison officials. They note that "any complaint for damages in

23  any civil action brought against a publicly elected or appointed

24  state or local officer, in his or her individual capacity... shall

25  allege with particularity sufficient material facts to establish...

26  individual liability..." Cal. Gov't Code § 951 (West 2009). However,

27  Defendants do not support their position that the term "publicly

28  elected or appointed state or local officer" includes CDCR employ-

11cv0401

1  ees. While the term may extend to some Defendants, it does not

2  clearly apply to all Defendants in this case.[8]

3      Therefore, since Defendants have not proven that this

4  heightened standard requirement is applicable to them, the Court

5  RECOMMENDS that Defendants' Motion to Dismiss in this regard be

6  DENIED.

7      2. Immunity under § 820.2

8      Defendants argue that § 820.2 immunizes them from this suit.

9  Section 820.2 states, in pertinent part, "a public employee is not

10  liable for injury resulting from his act or omission where the act

11  or omission was the result of the exercise of discretion vested in

12  him, whether or not such discretion be abused." Defendants contend

13  that, even if they had known about the risk of harm in advance,

14  their failure to take preventative measures would have been the type

15  of discretionary act protected by § 820.2. However, "section 820.2

16  applies to basic policy decisions not operational or ministerial

17  decisions that merely implement a basic policy decision." Martinez

18  v. City of Los Angeles, 141 F.3d 1373, 1379 (9th Cir. 1998)

19  (internal quotations omitted); see also George v. Sonoma County

20  Sheriff's Dept., 2010 WL 4117381 at *26 (N.D. Cal 2010) ("There is

21  no basis for immunizing ministerial decisions that merely implement

22  a basic policy already formulated."). Therefore, § 820.2 would only

23

24  [8]   Defendants cite Lavine v. Jessup, 161 Cal. App. 2d 59 (1958) (appellant's complaint did not allege "how and in exactly what manner the alleged facts rebut the existing presumption of regularity"). Lavine was a taxpayer action against a

25  county board of supervisors rather than a suit by a prisoner against prison guards. Furthermore, the relevant portion of Lavine interprets a statute that was

26  subsequently repealed in 1967. Defendants do not explain how this is relevant to the statute at issue here, which was enacted in 1996. Finally, some of the quotes

27  in the Motion to Dismiss attributed to Lavine are not found within that case.

    Defendants also cite Lopez v. Southern California Rapid Transit District,

28  40 Cal. 3d 780 (1985). That case likewise predates the statute at issue as raised in the Motion to Dismiss. Furthermore, Lopez was a action by bus passengers against a public corporation rather than a suit by a prisoner against prison guards.

11cv0401

be applicable if Defendants' decision not to take preventative measures was itself a policy decision rather than an operational decision pursuant to a standing policy.

In support of their argument for § 820.2 immunity, Defendants point to <u>Taylor v. Buff</u>, 172 Cal. App. 3d 384 (1985). In that case, a sheriff was found not liable for injuries sustained by prisoners at the hands of other prisoners even though that sheriff failed to lock cell doors. The court found that the sheriff's decision to leave cells unlocked at night rather than chain them shut (due to emergency evacuation concerns) was a discretionary one. However, the case currently before the Court differs for at least two reasons. First, unlike <u>Taylor</u>, Defendants were allegedly given specific information about the attack before it occurred. Second, the sheriff in <u>Taylor</u> made a policy decision in concert with the board of supervisors. In this case, Defendants do not argue that their failure to act was the result of a policy decision.

The Court notes that several recent cases have addressed whether prison guards have immunity under § 820.2. <u>See</u> <u>Allan v. Ditfurth</u>, 2011 WL 2174892 *11 (C.D. Cal. 2011) (Report and Recommendation adopted denying, in part, summary judgment against a prisoner's state law claim because a prison guard's decision not to take the prisoner to the infirmary was not a policy decision); <u>see also</u> <u>Sevey v. Soliz</u>, 2011 WL 2633826 *3 (N.D. Cal. 2011) (Order denying, in part, defendant prison guards' motion to dismiss prisoner's state law claim because immunity under section 820.2 required fact finding and was not merely a matter of law).

Therefore, since Defendants have not proven that their acts or omissions were the result of their discretionary decisions, the

11cv0401

1   Court RECOMMENDS that Defendants' Motion to Dismiss in this regard

2   be DENIED.

3        **3. Immunity under § 820.8**

4        Defendants further argue that former Warden Smalls and

5   Associate Warden Anderson should be dismissed from the lawsuit if

6   Plaintiff's allegations against them are predicated on their

7   supervisory roles. <u>See</u> § 820.8 ("a public employee is not liable for

8   an injury caused by the act or omission of another person").

9   However, the Complaint does not name these Defendants solely in

10  their supervisory roles. Therefore, construed liberally, the

11  Complaint alleges acts or omissions by them personally.

12       Therefore, absent a showing by Defendants that the relevant

13  acts and omissions were solely committed by Defendants other than

14  former Warden Smalls and Associate Warden Anderson, the Court

15  RECOMMENDS that Defendants' Motion to Dismiss in this regard be

16  DENIED.

17       Defendants have failed to show that the heightened pleading

18  standard of § 951 or the immunities of §§ 820.2 or 820.8 apply to

19  the decisions, acts, and/or omissions Plaintiff alleges. Therefore,

20  the Court RECOMMENDS that Defendants' Motion to Dismiss in this

21  regard be DENIED.

22  E.    CONCLUSION

23       The Court RECOMMENDS:

24       1. Defendants' Motion to Dismiss regarding their immunity

25  from monetary damages sought against them in their official

26  capacities be GRANTED.

27       2. Defendants' Motion to Dismiss regarding Plaintiff's

28  failure to exhaust his administrative remedies under federal and

    state law be GRANTED.

                                                          11cv0401

1        3.  Defendants' Motion to Dismiss regarding Plaintiff's

2   Eighth Amendment claim be DENIED.

3        4.  Defendants' Motion to Dismiss regarding a heightened

4   pleading standard noted in California Government Code § 951 and

5   their immunity from suit under California Government Code §§ 820.2

6   or 820.8 be DENIED.

7        For the aforementioned reasons, the Court RECOMMENDS

8   Defendant's Motion to Dismiss be GRANTED in part and DENIED in part.

9   The Court further RECOMMENDS that Plaintiff's Complaint be DISMISSED

10  WITHOUT PREJUDICE because Plaintiff may be able to cure the

11  deficiencies in his Complaint as noted in this Report and Recommen-

12  dation.[9/]

13                            VII

14                      RECOMMENDATION

15       After a review of the record in this matter, the undersigned

16  Magistrate Judge RECOMMENDS that the Defendant's Motion to Dismiss

17  be GRANTED in part and DENIED in part and that Plaintiff's Complaint

18  be DISMISSED WITHOUT PREJUDICE.

19       This Report and Recommendation of the undersigned Magistrate

20  Judge is submitted to the United States District Judge assigned to

21  this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

22       **IT IS ORDERED** that no later than September 12, 2011, any

23  party to this action may file written objections with the Court and

24  serve a copy on all parties. The document should be captioned

25  "Objections to Report and Recommendation."

26

27

28  _____

[9/]     See Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986) ("leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.").

11cv0401

1       **IT IS FURTHER ORDERED** that any reply to the objections shall

2   be filed with the court and served on all parties no later than

3   September 26, 2011, the parties are advised that failure to file

4   objections within the specified time may waive the right to raise

5

6

7

8

9

10

11  those objections on appeal of the Court's order. Martinez v. Ylst,

12  951 F.2d 1153 (9th Cir. 1991).

13

14  DATED: August 22, 2011

15

16

17                              _____
                                Hon. William V. Gallo
18                              U.S. Magistrate Judge

19

20

21

22

23

24

25

26

27

28

11cv0401